```
              IN THE UNITED STATES DISTRICT COURT
              FOR THE MIDDLE DISTRICT OF GEORGIA
                        ATHENS DIVISION
```

| | |
|---|---|
| MERIAL INC. and MERIAL S.A.S., | * |
| Plaintiffs, | * |
| vs. | * |
| CEVA SANTÉ ANIMALE S.A., | *   CASE NO. 3:15-CV-40 (CDL) |
| HORIZON VALLEY GENERICS INC., | |
| TRUE SCIENCE HOLDINGS, LLC, and | * |
| TRURX LLC, | |
| | * |
| Defendants. | |
| | * |

## O R D E R

Plaintiffs Merial Inc. and Merial S.A.S. sued Defendants Ceva Santé Animale S.A., Horizon Valley Generics Inc., True Science Holdings, LLC, and TruRx LLC for breach of contract, false or misleading advertising, unfair competition, and deceptive trade practices. True Science and TruRx moved to dismiss Count III, the breach of contract claim against them. As discussed below, that motion (ECF Nos. 28 & 62) is granted. Horizon Valley Generics moved to dismiss all of the claims against it. For the reasons set forth below, that motion is (ECF Nos. 26 & 59) granted in part and denied in part. Counts I, II, and III against Horizon Valley Generics are dismissed. Counts IV, V, and VI remain pending against all Defendants.

MOTION TO DISMISS STANDARD

"To survive a motion to dismiss" under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The complaint must include sufficient factual allegations "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In other words, the factual allegations must "raise a reasonable expectation that discovery will reveal evidence of" the plaintiff's claims. *Id.* at 556. "Rule 12(b)(6) does not permit dismissal of a well-pleaded complaint simply because 'it strikes a savvy judge that actual proof of those facts is improbable.'" *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007) (quoting *Twombly,* 550 U.S. at 556).

FACTUAL ALLEGATIONS

Plaintiffs Merial Inc. and Merial S.A.S. (collectively, "Merial") allege the following facts in support of their claims. Merial has rights to U.S. Patent No. 6,096,329 ("'329 Patent"), which claims a flea and tick treatment for dogs and cats that contains the active ingredients fipronil and s-methoprene. Merial sells the fipronil and s-methoprene product under the name Frontline Plus.

In 2012, Merial accused Ceva Santé Animale, S.A. and its wholly owned subsidiary Horizon Valley Generics, Inc. ("HVG") of infringing the '329 Patent. Merial and Ceva entered a License Agreement to settle the dispute. *See* Am. Compl. Ex. A, Settlement & License Agreement, ECF No. 15-1.[1] The License Agreement grants Ceva a license to the '329 Patent and permits Ceva to distribute a generic, over-the-counter version of the Frontline Plus product ("licensed product"). *Id.* § 3.1. As part of the License Agreement, Ceva, on behalf of itself and its affiliates, agreed not to use any trademark, trade name, or packaging of Merial in any comparative advertising involving the licensed product. *Id.* § 3.3.4. This restriction, however, does not prevent Ceva from indicating that its product contains the same active ingredients as the "leading brand." *Id.*

The License Agreement further provides that neither Ceva nor any of its affiliates would be responsible for any prohibited comparative advertising by third party distributors unless Ceva or any of its affiliates "sponsor[ed], contribut[ed] funds for or actively encourage[ed]" such comparative advertising. *Id.* The Agreement does require Ceva to "notify its appointed Third Party distributor(s) not to engage in" the type of comparative

---

[1] Merial attached copies of the relevant agreements to its Complaint. The documents are central to Merial's claims, their authenticity is not challenged, and all parties rely on the agreements in their briefs. The Court may thus consider the agreements in ruling on the pending motions to dismiss. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (per curiam).

advertising that Ceva and its affiliates were prohibited from engaging in by the License Agreement. *Id.* And if Merial filed a lawsuit against a third party distributor claiming that it was engaging in this prohibited comparative advertising, Ceva agreed to use "reasonable efforts . . . to assist Merial by restraining or limiting the supply" of the licensed product to the third party distributor as long as Merial pursued the lawsuit and until the third party distributor stopped the advertising and agreed in writing with Ceva to refrain from any such further advertising. *Id.*

After Ceva and Merial entered the License Agreement, HVG contracted with CAP Supply, Inc. to distribute the generic Frontline Plus product. In the distribution agreement, CAP Supply agreed not to engage in any comparative advertising using the name Frontline Plus or any Merial trademarks or tradenames. Ceva later assumed HVG's agreements under the CAP Supply Agreement. CAP Supply subsequently entered into a sub-distribution agreement with True Science Holdings, LLC and TrueRx LLC (collectively, "True") for True to distribute the generic Frontline Plus product. True began distributing the product to large retailers such as Walmart and Petco under the names PetAction Plus and PetLock Plus. The PetAction Plus website contained "an exact image of Merial's FRONTLINE PLUS product, bearing Merial's stylized trade name, trademarks, and trade dress

4

. . . next to an image of a PetAction Plus product with a similar color scheme." Am. Compl. ¶ 59, ECF No. 15. Merial asserts that "some, or all, of the PetAction Plus products are sold in packaging designed to imitate the trade dress and overall commercial impression of Merial's FRONTLINE PLUS packaging." *Id.* ¶ 62.

When True first began distributing PetAction Plus and PetLock Plus, the packages contained a sticker that read: "Contains THE SAME active ingredients—FIPRONIL and (S)-METHOPRENE—found in FRONTLINE PLUS." *Id.* ¶¶ 55-57, ECF No. 15. The words "active ingredients" were "in much smaller font than the other words" on the sticker. *Id.* ¶¶ 56, 58. On newer packaging, there is no longer a "disparity in size" between the fonts, but the FRONTLINE PLUS trademark still appears on the sticker. *Id.* ¶ 69.

After True began distributing PetAction Plus and PetLock Plus, True entered into an Authorization and Indemnification Agreement with Ceva and HVG. That agreement gave True permission to package and label the products consistent with HVG's U.S. Environmental Protection Agency registrations. As part of that agreement, True agreed that it would not "modify or change the packaging of the Product manufactured by or on behalf of Ceva in any manner that references or identifies the trademark, trade name, trade dress or packaging of any third party." Am. Compl.

5

Ex. B, Authorization & Indemnification Agreement ¶ 3, ECF No. 15-2. This restriction includes "any comparative advertising claim referencing or identifying such trademark, trade name, trade dress or packaging of any third party." *Id.* The provision does not identify any third party by name. The Authorization and Indemnification Agreement states that it "is intended and agreed to be solely for the benefit of the Parties hereto and their permitted successors and assigns, and no other party will be entitled to rely on this Agreement or accrue any benefit, claim, or right of any kind whatsoever pursuant to, under, by, or through this Agreement." *Id.* ¶ 18.

When Merial learned that the PetAction Plus and PetLock Plus products were being marketed using comparative advertising that referred to Frontline Plus, Merial brought this action. Merial sues Ceva and HVG for breach of the License Agreement (Counts I & II), and Merial sues Defendants as a third party beneficiary of the Authorization and Indemnification Agreement between Ceva, HVG and True (Count III). Merial also asserts that all Defendants engaged in false or misleading advertising in violation of the Lanham Act, 15 U.S.C. § 1125(a) (Count IV) and that they engaged in unfair competition and deceptive trade practices in violation of Georgia law (Counts V & VI).

DISCUSSION

HVG seeks dismissal of Merial's claims against it that are based on the License Agreement (Counts I & II).  HVG and True seek dismissal of Count III, which is based on the Authorization and Indemnification Agreement.  And HVG seeks dismissal of Merial's claims against it for false or misleading advertising, unfair competition, and deceptive trade practices (Counts IV-VI).  The Court addresses each claim in turn.

I. **Breach of License Agreement Claims**

In Counts I and II of its Complaint, Merial alleges that Ceva and HVG breached the comparative advertising provision of the License Agreement.  HVG moved to dismiss Counts I and II against it because HVG is not a party or signatory to the License Agreement.  License Agreement at 1.  Merial nonetheless argues that HVG should be bound by the Agreement.

The License Agreement, which is governed by Georgia law, states:  "Ceva will not, *and will cause its Affiliates not to*, in the Territory . . . use any trademark, trade name or packaging of Merial Limited or any of its Affiliates in any comparative advertising involving a Licensed Product . . . ."  License Agreement § 3.3.4 (emphasis added).  The License Agreement provides that Ceva had authority to bind its affiliates.  *Id.* § 6.1(b).  Reading these two clauses together, Merial argues that Ceva explicitly agreed that HVG would be bound by the comparative

7

advertising clause of the License Agreement. Merial's interpretation of the License Agreement is wrong. While there is no serious question that Ceva *could* bind HVG, a plain reading of the License Agreement reveals that Ceva bound *itself* to *cause* affiliates like HVG not to engage in comparative advertising using the Frontline mark. Although this may be a subtle distinction, it is legally significant. Nothing in the License Agreement states that HVG itself agreed to do anything. Moreover, Ceva did not agree that HVG would be bound by the comparative advertising clause. Rather, the License Agreement reflects an intention to place performance obligations only on Ceva; if a Ceva Affiliate violates the comparative advertising clause, then Merial's recourse is against Ceva itself.

Merial argues that even if Ceva did not agree that HVG would be bound by the comparative advertising clause, HVG should be bound by the License Agreement under equitable estoppel principles because HVG received significant benefits under the License Agreement. Although Georgia law certainly recognizes the principle of equitable estoppel, equity cannot aid Merial's desire to rewrite the License Agreement after the fact. In general, equitable estoppel seeks to prevent a party from attacking the very same agreement that the party simultaneously attempts to use to its advantage. Equity frowns upon a party's attempt to "rely on the contract when it works to its advantage

8

and then repute it when it works to its disadvantage." *Helms v. Franklin Builders, Inc.*, 305 Ga. App. 863, 866, 700 S.E.2d 609, 612 (2010) (auoting *LaSonde v. CitiFinancial Mortg. Co.*, 273 Ga. App. 113, 115, 614 S.E.2d 224, 226 (2005)). Merial analogizes the present case to arbitration cases that stand for the principle that a non-signatory to an agreement that contains an arbitration clause cannot claim the benefit of certain provisions of the agreement while avoiding the requirements of the arbitration clause. *See, e.g., id.*; *Fencourt Reinsurance Co. v. ITT Indus., Inc.*, No. 06-4786, 2008 WL 2502139, at *9 (E.D. Pa. June 20, 2008); *Amkor Tech., Inc. v. Alcatel Bus. Sys.*, 278 F. Supp. 2d 519, 521-22 (E.D. Pa. 2003). The present case is distinguishable because HVG is not seeking to disclaim a significant part of the agreement.

Merial also relies on *Sea-Land Serv., Inc. v. Sellan*, 64 F. Supp. 2d 1255 (S.D. Fla. 1999). In *Sea-Land*, the plaintiff refused to sign a part of his settlement agreement, but his refusal did not render the contract unenforceable because the parties had an oral agreement on the portion of the agreement that he refused to sign and the plaintiff cashed the settlement check. *Id.* at 1259. Importantly, in *Sea-Land*, there was some evidence that the plaintiff had agreed to be bound by the settlement agreement even though he did not sign it. Here, as discussed above, there is no indication that HVG actually agreed

9

to be bound by the comparative advertising clause. In sum, Merial did not point to any authority applying equitable estoppel under the circumstances presented here, and the Court found none. Counts I and II against HVG are therefore dismissed.[2]

## II. Breach of Authorization and Indemnification Agreement Claim

In Count III of its Complaint, Merial, as a third party beneficiary, seeks to enforce the "No Comparative Advertising" provision of the Authorization and Indemnification Agreement between Ceva, HVG, and True. Am. Compl. ¶ 53. Defendants seek dismissal of Count III, arguing that it is foreclosed by the "No Third Party Beneficiaries" provision. The Court agrees with Defendants.

The Authorization and Indemnification Agreement is governed by Delaware law. Authorization & Indemnification Agreement ¶ 15. Under Delaware law, "to qualify as a third party beneficiary of a contract, (a) the contracting parties must have intended that the third party beneficiary benefit from the contract, (b) the benefit must have been intended as a gift or in satisfaction of a pre-existing obligation to that person, and (c) the intent to benefit the third party must be a material part of the parties'

---

[2] Merial also argues that HVG should be considered a third party beneficiary of the License Agreement. Under Georgia law, "[t]he beneficiary of a contract made between other parties for his benefit may maintain an action against the promisor on the contract." O.C.G.A. § 9-2-20(b). Merial cited no authority for its apparent contention that a party to a contract may maintain a breach of contract action against a third party beneficiary, and this argument fails for the same reasons Merial's equitable estoppel argument fails.

purpose in entering into the contract." *In re Stone & Webster, Inc.*, 558 F.3d 234, 241 (3d Cir. 2009) (applying Delaware law).

The Court must look to the contract language to determine whether a party is a third party beneficiary. *Ellis v. Tri State Realty Assocs. LP*, C.A. No.: N14C-03-051 PRW, 2015 WL 993438, at *6 (Del. Super. Ct. Feb. 27, 2015). If the contract does not mention the third party by name or by general reference and if it does not contain language indicating an intent to confer a benefit on the third party, then the third party is not a third party beneficiary. *Bromwich v. Hanby*, C.A. No. S08C-07-008, 2010 WL 8250796, at *2 (Del. Super. Ct. July 1, 2010). "A third party may benefit from the performance of the contract without acquiring third party beneficiary status." *Id.* Thus, if the contract contains a third party beneficiary clause and there is no other language in the contract indicating an intent to confer a benefit on a third party, then the Delaware courts generally find that there is no third party beneficiary. *In re Stone & Webster, Inc.*, 558 F.3d at 241 (finding no third party beneficiary standing based on a purchase agreement that contained a "no third party beneficiary" clause and contained no language indicating an intent to confer a benefit on a third party).

Here, the Authorization and Indemnification Agreement states that it "is intended and agreed to be solely for the benefit of the Parties hereto and their permitted successors and assigns,

11

and no other party will be entitled to rely on this Agreement or accrue any benefit, claim, or right of any kind whatsoever pursuant to, under, by, or through this Agreement." Authorization & Indemnification Agreement ¶ 18.  The Agreement does not mention Merial by name, and there is no language in the contract indicating any intent to confer a benefit on Merial. Merial argues that the "No Comparative Advertising" provision is clearly intended to benefit Merial.  To reach that conclusion, the Court must look beyond the unambiguous language of the contract and ignore the clear intent of the parties as described in that clear language.  The Court refuses to interpret "no third party beneficiaries" to mean "Merial is a third party beneficiary."

For all of these reasons, the Court concludes that Merial is not a third party beneficiary of the Authorization and Indemnification Agreement, so Count III is dismissed.

### III. Advertising Claims

In Counts IV, V, and VI, Merial alleges that all Defendants engaged in false or misleading advertising, unfair competition, and deceptive trade practices.  All of these claims are based on Merial's contention that the PetAction Plus and PetLock Plus packaging and advertising contained false and misleading statements.  HVG seeks dismissal of Counts IV, V, and VI,

contending that Merial does not sufficiently allege that HVG was involved in making any false or misleading statements.[3]

Merial does not allege that HVG made any false or misleading statements directly. Rather, Merial alleges that True made false or misleading statements on the PetAction Plus and PetLock Plus packaging and in its advertising. Merial contends that HVG can be held liable for this conduct under an agency theory; according to Merial, True is HVG's agent because True uses HVG's EPA registration number to sell the products and is registered with the EPA as HVG's supplemental distributor. Am. Compl. ¶¶ 37-40; *accord* Authorization & Indemnification Agreement ¶ 2; Authorization & Indemnification Agreement Ex. A, Label & Package Authorization, ECF No. 15-2 at 10 (giving TruRX permission to package and label PetAction Plus and PetLock Plus using HVG's registration).

"The relation of principal and agent arises wherever one person, expressly or by implication, authorizes another to act for him or subsequently ratifies the acts of another in his behalf." O.C.G.A. § 10-6-1. HVG argues that even if True is HVG's agent for some purposes, True cannot be considered the agent of HVG for purposes of Merial's false advertising claims because True's conduct was contrary to the Authorization and Indemnification Agreement's prohibition on comparative

---

[3] Although True disputes that Merial is entitled to relief on these claims, True did not move to dismiss them.

13

advertising. But construing the allegations in the light most favorable to Merial, the Court does not find this claim sufficiently implausible to dismiss it at this early stage of the litigation. HVG's motion to dismiss Counts IV, V, and VI is therefore denied.

## CONCLUSION

As discussed above, True's Motion to Dismiss Count III (ECF Nos. 28 & 62) is granted. HVG's Motion to Dismiss (ECF Nos. 26 & 59) is granted in part and denied in part. Counts I and II against HVG are dismissed. Counts I and II remain pending against Ceva.[4] Count III is dismissed in its entirety because Merial is not a third party beneficiary of the Authorization and Indemnification Agreement. Counts IV, V, and VI remain pending against all Defendants.

IT IS SO ORDERED, this 7th day of October, 2015.

> S/Clay D. Land
> CLAY D. LAND
> CHIEF U.S. DISTRICT COURT JUDGE
> MIDDLE DISTRICT OF GEORGIA

---

[4] Ceva filed a motion to dismiss based on lack of service (ECF No. 105). That motion is not yet ripe for consideration, so the Court will address it in a separate order.

14